---
Statement.

---

# Richmond.

TIMBERLAKE'S COMMITTEE AND OTHERS v. MOORE AND OTHERS.

March 14, 1907.

1. DEED TO SECURE CREDITORS—*Subsequent Sale by Grantor—Misappropriation of Proceeds—Release by Trustee and Creditors.*—Where land conveyed in trust to secure creditors is subsequently sold by the grantor, the proceeds of the sale are impressed with the trusts which rested upon the land, and cannot be diverted to an unsecured debt by the grantor or anyone else except with the consent, express or implied, of the creditors secured. If the trustee and creditors secured unite in a deed releasing the land to the grantor, in which it is recited that the land has been sold and the proceeds applied in payment of the debts secured, and in consideration thereof the release is made to the grantor, this affords no warrant for an appropriation of those proceeds to an unsecured debt, and if they are applied to an unsecured debt of one of such beneficiaries the application will be set aside at the instance of other creditors secured by the deed.

2. EQUITY—*Master's Report—Exceptions—Estoppel.*—The concurrence in this cause of a secured creditor in the exceptions to the commissioner's report was based upon the statement of the commissioner that an unsecured debt was barred by act of limitations, and not to the method in which the commissioner applied the proceeds of the sale of the trust property, and said creditor is not estopped from relying upon such application.

Appeal from a decree in chancery of the Chancery Court of the city of Richmond. Decree for complainants. Defendants appeal.

*Affirmed.*

The opinion states the case.

*Leake & Carter* and *George P. Haw,* for the appellants.

*W. Newton, Jr., Isaac Diggs* and *T. H. Edwards,* for the appellees.

KEITH, P., delivered the opinion of the Court.

Fleming Hay made a deed of assignment to Hughes, trustee, dated September 12, 1887, conveying five parcels of land in King William county and personal property, to secure certain debts, among them one to Mrs. E. J. Cross and George P. Haw, committee of Miss Timberlake, a lunatic, aggregating $1,355 principal; to J. W. Hughes $1,500 principal, and to J. S. Moore $1,794.99 principal; in the second class, to Magruder and others debts aggregating $1,894.62, and in the third class all other creditors ratably upon such sums as might be due them. It seems that Mrs. Cross and Haw, committee, had two debts against Fleming Hay, one of which was secured, as we have seen in the first class mentioned in the trust deed, and the other of $1,069.77 for rents due the committee, accrued after the deed was executed. The grantor, Fleming Hay, sold a farm called "The Grove" embraced in this deed, and a part of the proceeds of the sale are the subject of this controversy.

George P. Haw, counsel for Fleming Hay, in paying out the money received for "The Grove" appropriated $1,003 to the unsecured debt due the committee of Miss Timberlake, instead of crediting it upon the debt due to the committee secured in the deed. As authority for this he relies upon verbal directions received by him from Hay. In his deposition Mr. Haw says that "Mr. Hay was raised by Captain Henry Timberlake, the father of Mrs. Cross and Miss Timberlake. He was exceedingly fond of them and they of him, and when this sale was made my instructions were to pay Mrs. Wormley's debt, which was a first lien on the place, as I remember, and it was agreed that Mr. Moore should have $450 on his debt, and the balance he said 'you take and pay on what I owe Mollie and Emma,' meaning Miss Timberlake and Mrs. Cross. The ap-

plication really was never made except in so far as it is made in this account, which I have recently made up for this suit. It was simply carried on my books as so paid on the general account. Now, so far as I am concerned, I am willing to admit that if any creditors holding liens on the Grove property object to the manner of application, they would have a right to correct it, but so far as Mr. Hay himself is concerned, if he were living, or those claiming under him since his death, they are bound by his own instructions given during his lifetime."

The application made of this money is objected to by creditors holding liens on the Grove property, and we agree with Mr. Haw that they have the right to have it corrected. Whether or not Mr. Hay would be estopped from complaining that his counsel and agent had followed his instructions, is quite another matter and one which we are not here called upon to decide.

Reliance is also placed by counsel for appellant upon a deed from John T. Hughes, trustee, of the first part, F. Hay of the second part, and John W. Hughes & Son, J. S. Moore and George P. Haw, committee and assignee of sundry parties of the third part. In that deed it is recited that "Whereas the said 'Grove' has been sold and the proceeds applied in payment of said secured debts, and he, the said F. Hay, desires that the said property should be released from said deeds of trust; now, therefore, this deed witnesseth, that for and in consideration of the premises and in further consideration of one dollar to him in hand paid the said John T. Hughes, trustee, with the consent of the said John W. Hughes & Son, J. S. Moore, George P. Haw, signified by their signing and sealing this deed, doth release unto the said F. Hay all their claims upon the said tract of land called the 'Grove' and containing 170 acres." This deed does release the claims of these creditors upon the "Grove," but the consideration for that release is that the farm had been sold and the proceeds applied in payment of the debts secured.

Fleming Hay had by his deed of the 12th of September, 1887, dedicated the proceeds of the "Grove" farm to the payment of certain debts. The subject passed out of his control by the execution of that deed, and no subsequent direction given by him as to the appropriation of the proceeds of that farm was of any avail, unless made with the consent of the secured creditors. There is no suggestion in the record of any consent on the part of Moore, except that he signed the deed of the 31st of July, 1900, and that, as we have seen, recites that the "Grove" farm has been sold and its proceeds applied in payment of the debts secured by it, which cannot afford any warrant for an appropriation of those proceeds to an unsecured debt.

The report of the commissioner to whom the cause was referred applies the sum of $1,003, which is in dispute, to the payment of the debt due Timberlake's committee, in accordance with the provisions of the deed. Of course the effect of this was to leave the debt for rent subsequently accrued in favor of Timberlake's committee, to which it had been improperly applied, unpaid and unsecured; and the commissioner while upon the subject says that this unsecured debt is probably barred by the statute of limitations. To this report of the commissioner an exception was taken by Timberlake's committee in the following words:

"Fourth Exception. Commissioner, on page 10, arbitrarily and without authority, decides that certain payments made by Mr. Hay in his lifetime should not have been made by him, and taking this amount from one debt he applies it to another and then decides that the latter debt is paid, after which he suggests that this debt, so robbed of its payment, is probably barred. E. J. Cross, M. W. Timberlake's committee, and George P. Haw except and E. A. Saunders and Thomas Pollard concede the correctness of this exception. The fact is the debt is not barred, and whether it is or not is a matter the commissioner had nothing to do with."

The fact that Thomas Pollard concurred in that exception

is relied upon in argument as committing him to the correctness of the application of the credit to the unsecured debt of Timberlake's committee, and as estopping him to ask for or to receive any benefit from the decree based upon a report which he himself had, by this exception, admitted to be wrong.

Without going into questions which might arise for discussion in the consideration of this subject, we shall content ourselves with saying that the exception nowhere commits Thomas Pollard to the proposition that the application of the $1,003 to the unsecured debt was proper. The exception seems to be pointed at the conclusion stated by the commissioner that the unsecured debt, the payment of which was held to be improper, is barred by limitation, and that is the proposition of which Saunders and Pollard conceded the correctness. This appears to be the case from the body of the exception, but is put beyond doubt by the last clause, which says: "The fact is the debt is not barred, and whether it is or not is a matter the commissioner had nothing to do with."

Upon the whole case we are of opinion that the "Grove" tract was conveyed to secure the payment of debts, among others that due to the appellants; that when this tract was sold by the grantor, Fleming Hay, and the proceeds came into his hands and those of his counsel for distribution, they were impressed with the trust which rested upon the farm; that neither Hay nor his counsel had any authority to divert any part of the proceeds to the payment of any other debt of the grantor until all the debts secured had been satisfied, unless they acted under the authority or with the consent, express or implied, of the parties interested, and that this record furnishes no authority for such appropriation. We are further of opinion that, while the rights of the creditors secured must be protected, the appropriation made by direction of Fleming Hay should be disturbed only to the extent that it may be necessary for that purpose. Whether it will be necessary to recall the whole or only a part of the diverted fund is a matter of detail which may require

Opinion.

the report of a commissioner, and which can be more satisfactorily dealt with in the Chancery Court. The decree appealed from is affirmed, and the cause remanded for further proceedings to be had therein not inconsistent with this opinion.

*Affirmed.*